IN THE DISTRICT COURT IN AND FOR ADAIR COUNTY
STATE OF OKLAHOMA

FILED
ADAIR COUNTY DIST... ...URT
STILWELL, OK

WARREN HEIDELBERGER,

        Plaintiff,

    v.

ILLINOIS RIVER RANCH RECREATIONAL
VEHICLE PARK PROPERTY OWNERS
ASSOCIATION INC., an Oklahoma corporation; and
BRANDI ANN PEACE, an individual,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

MAR 2 8 2023

NICHOLE COOPER
COURT CLERK

Case No. CJ -2023- 22
Judge Payton

DAMAGES SOUGHT IN EXCESS
OF $2,500,000.00
JURY TRIAL DEMANDED

## PETITION FOR REDRESS OF GRIEVANCES UNDER 15 U.S.C. § 1692 et seq. AND OKLAHOMA STATUTES TITLE 15 SECTION 751 et seq.

Plaintiff, Warren Heidelberger [hereinafter "Plaintiff"], pro se in the above styled cause, petitions this court for redress of grievances against the Defendants, ILLINOIS RIVER RANCH RECREATIONAL VEHICLE PARK PROPERTY OWNERS ASSOCIATION INC [hereinafter "IRRRVPPOA" or "Defendant"], and BRANDI ANN PEACE [hereinafter "PEACE" or "Defendant"] and based on information and belief and investigation, except for those allegations which pertain to the Plaintiff (which are alleged on personal knowledge), hereby makes the following allegations:

### GENERAL ALLEGATIONS

1.     This action arises from Defendants' attempts to collect an alleged consumer debt in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 et seq. ("FDCPA").

2.     This action also arises from Defendants' attempts to collect an alleged consumer debt in violation of the Oklahoma Consumer Protection Act, 15 OK. Stat. § § 751 et seq. ("OCPA").

3.     The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C.A. § 1692(a) to (e).

4.     The Oklahoma legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the consumer's rights and that debt collectors and others must be prohibited from engaging in unfair and deceptive acts or practices.

5.     Creditors are considered "debt collectors" under the "false name" exception to the FDCPA. See 15 U.S.C.A. § 1692a(4); § 1692a(6)(A); § 1692a(6)(F)(ii); § 1692a(6). Although 15 U.S.C.A. § 1692a(6)(F)(ii) excludes from the term "debt collector" "any person collecting or attempting to collect any debt. . . to the extent such activity. . . concerns a debt which was originated by such person," a



EXHIBIT
1

"debt collector" is any creditor who in the process of collecting his own debts uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

6.      The impact of the language used by debt collectors is judged from the perspective of the least sophisticated consumer in our society. *Ferree v. Marianos*, 129 F.3d 130 (10th Cir. 1997).

7.      Original creditors become debt collectors for purposes of the FDCPA when the least sophisticated consumer would have the false impression that a third party was collecting the debt. *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 *(2d Cir. 1998)*.

8.      The least sophisticated consumer would not research the presence or absence of state registrations to find out if the entity he is dealing with has properly registered its name... Fair Debt Collection Practices Act, § 807, 15 U.S.C.A. § 1692e. *Hrivnak v. NCO Portfolio Management, 994 F. Supp. 2d 889 (N.D. Ohio 2014)*.

9.      Plaintiff brings this action to challenge the misconduct of Defendants with regard to Defendants' attempts to immorally, unethically, unlawfully, unconscionably, unscrupulously, oppressively, fraudulently, and/or maliciously collect an alleged debt claimed to be owed to IRRRVPPOA by Plaintiff which caused Plaintiff actual and statutory damages.

## PARTIES

10.      Plaintiff is a natural person residing in this judicial district of the State of Oklahoma.

11.      Plaintiff was allegedly obligated to pay a debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C.A. § 1692a(3) of the **FDCPA**.

12.      Defendant IRRRVPPOA is or was at all relevant times an Oklahoma Not-For-Profit-Corporation with its principal place of business located at 462601 Riverside Drive, Watts Oklahoma 74964.

13.      Defendant IRRRVPPOA uses an instrumentality of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts arising from home owners association dues obligations.

14.      Defendant IRRRVPPOA is both an "original creditor" and a "debt collector" as defined by the false name provision of the **FDCPA**, because of Defendants' repeated conduct of using various acronyms, pseudonyms, aliases, assumed names and names of other companies *rather than* its actual full business name, trade name, name under which it usually transacted business or commonly used acronym of its registered name in communicating with Plaintiff. In fact, IRRRVPPOA was acting as a debt collector as to the alleged debt it attempted to collect from Plaintiff. 15 U.S.C.A. § 1692a(6).

15.      Defendant PEACE is a natural person, residing in the State of Oklahoma. At all relevant times, Defendant PEACE is or was an employee, agent, officer, and/or director of IRRRVPPOA.

16.      Defendant PEACE is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6).

17.      Defendant PEACE is liable for the acts of IRRRVPPOA because she is an officer of IRRRVPPOA; sets and approves of IRRRVPPOA's collection policies, practices, and procedures; and directed the unlawful activities described herein.

18.      At all times herein mentioned, Defendant PEACE was an officer, director, agent, servant, employee, partner, and/or associate of her codefendants, and each of them, and at all said times, each Defendant was acting in the full course and scope of said office, directorship, partnership, agency, service, employment, and/or association. Any reference to "Defendants" without further qualification is meant by Plaintiff to refer to each Defendant, and all of them, named above.

19.      All acts of corporate agents as alleged herein were authorized or ratified by an officer, director, or managing agent of IRRRVPPOA.

## JURISDICTION AND VENUE

20.      This Court has jurisdiction over this action pursuant to 15 U.S.C.A. § 1692k(d), Oklahoma Statutes Title 15 § 761.1 and Oklahoma Statutes Title 15 § 776.2.

21.     Venue is proper in this district because Plaintiff lives in this district, and all of the events giving rise to Plaintiff's claims occurred in this district.

22.     Personal jurisdiction is established because Defendants do business in this district of and reside in the State of Oklahoma.

FACTUAL ALLEGATIONS

23.     In October 2013, Plaintiff bought real estate in a housing development with restrictive covenants attached to the deed, and became a "consumer" / "debtor", obligated upon purchasing his property to pay assessments pursuant to the governing documents of his property owners association and state statute, such that property owners association Defendant became a "merchant" / "creditor", and such that assessment qualified as an obligation of a consumer to pay money arising out of a "transaction," and while the assessment was to be used to maintain and repair the common area, it nevertheless had a primarily personal, family, or household purpose.

24.     This case involves money alleged to be due or owing from a natural person by reason of distribution of any thing of value for primarily personal, family or household purposes. As such, this action arises out of a "consumer transaction" as that term is defined by 15 OK Stat § 752(2).

25.     On March 28th 2022, Defendants sent Plaintiff an email seeking to collect a debt allegedly owed to IRRRVPPOA using the false names "Illinois River Ranch Resort POA" and "IRR RV Park". See: "Exhibit A", attached and incorporated herein by reference. Upon reading Defendant's email, Plaintiff immediately suffered injuries including extreme confusion, life-threatening emotional and mental distress, digestive troubles and migraine headache, due to the Defendants' unlawful acts, including the false claim that the alleged debt was due and owing to someone other than the original creditor. Plaintiff was so confused and misled by Defendants' email that he considered waiving his rights and giving up his property just to get Defendant to stop harassing him. Plaintiff suffered injury-in-fact by Defendants' creating the risk that Plaintiff would fall victim to abusive debt collector practices and/or pay an amount of money to the WRONG party.

26.     At 4:48AM on April 1st 2022, Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA this time using the false names "IRR RV Park" and "IRRV POA". See: "Exhibit B", attached and incorporated herein by reference. Upon being awakened by and reading Defendant's email, Plaintiff became extremely distressed, deeply depressed, confused, sickeningly anxious and irritated; suffered a panic attack; lost his appetite, was unable to return to the sleep that good health requires and was unable to focus his attention on fully caring for his young child. Plaintiff was so confused and misled by Defendants' email that he considered giving up his rights and property just to get Defendant to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating a materially greater risk that Plaintiff would fall victim to abusive debt collector practices and/or pay an amount of money to the WRONG party.

27.     At or around about 1:00PM On April 1st 2022, Defendants trespassed on Plaintiff's homestead and duct-taped a demand letter to the front-door of Plaintiff's residence seeking to collect a debt allegedly owed to IRRRVPPOA, in which Defendants used more false names - "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)" and "Illinois River Ranch RV POA Board of Directors". See: "Exhibit C", attached and incorporated herein by reference. Defendants then made a telephone call to an acquaintance of Plaintiff's ex-wife saying "We need to find Warren. He has not paid his dues and we have some papers for him." This act was so upsetting to Plaintiff's ex-wife that she called Plaintiff's mother, who was also shocked and emotionally pained by Defendants acts. When Plaintiff found Defendants' demand letter he was so extremely shocked and anguished by the false claims, the trespass, the invasion of privacy and intrusion upon his seclusion, so indignant that his family and his rights had been injured, and so confused by the fake names used by Defendants that he immediately suffered a terrible migraine headache that lasted all day and night, was unable to care for his young son, and felt life-threatening mental and emotional distress, sickeningly anxious, depressed, nervous, unsafe and

insecure in his home. Plaintiff was so confused and misled by Defendants' demand letter that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk that Plaintiff would fall victim to abusive debt collection practices and/or pay money to the WRONG party.

28.     Defendants' April 1st 2022 demand letter is a "communication" as that term is defined by 15 U.S.C.A. § 1692a(2) because it conveyed information regarding the alleged debt directly to Plaintiff through a written letter.

29.     Defendants' April 1st 2022 demand letter states in pertinent part:

"You were also court ordered to pay $4935.14 in court costs to the Association on August 10th 2022 …
(…)
The covenants call for an interest charge of 10% per annum and that is being assessed to your account so these numbers will continue to rise."


30.     No court ordered Plaintiff to pay anything to anyone on August 10 of any year as stated in Defendants' demand letter.

31.     At the time of the letter, no interest charge was being assessed to Plaintiff's account as stated in Defendants' demand letter.

32.     On April 7th 2022 Plaintiff sent Defendant a letter via U.S.P.S. certified Mail which was received by Defendants on April 13th 2022 disputing the debt, asking for more information, refusing to pay and noticing Defendant to the fraudulent nature of Defendants' claims. ("Exhibit D", to be entered into evidence at trial).

33.     On April 25th 2022 Plaintiff sent Defendant a letter via U.S.P.S. certified Mail which was received by Defendants on April 27th 2022 disputing the debt, asking for more information and requesting validation or verification of the alleged debt. See: "Exhibit E", attached and incorporated herein by reference.

34.     To date Plaintiff has not received any verification/validation of the alleged debt from Defendants as required by the FDCPA, *nor any other response to his repeated requests for information*, which has caused further injury to Plaintiff, including being misled and confused as to the proper course of action, increased risk of paying money to the wrong party, being deprived of truthful information, nervous anxiety, depression, insomnia, indigestion, out-of-pocket expenses, etc.

35.     On April 28th 2022 Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit F", to be entered into evidence at trial). Upon reading Defendant's email, Plaintiff immediately suffered injuries including extreme confusion, life-threatening emotional and mental distress, migraine headache, heart palpitations, anxiety, and insomnia. Plaintiff was so confused and misled by Defendants' email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk of Plaintiff falling victim to abusive debt collection practices and paying an amount of money to the WRONG party.

36.     At 5:17AM on May 1st 2022 Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit G", to be entered into evidence at trial). Upon being rudely awakened from sleep by and reading Defendant's fraudulent email Plaintiff immediately suffered extreme relational, emotional and mental harms including depression; anxiety attacks with severe physical manifestations including migraine headache, heart arrhythmia, high-blood pressure, diarrhea, trouble breathing and visual disturbances; continuous thoughts of Defendants' previous invasions of Plaintiff's privacy; confusion as to his rights; loss of sleep; loss of appetite and inability to focus on fully caring for his young son. Plaintiff was so confused and misled by Defendants' email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him.

Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk of Plaintiff falling victim to abusive debt collection practices and paying an amount of money to the WRONG party.

37.     On May 4th 2022 Defendants sent an email sent to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit H", to be entered into evidence at trial). Upon reading Defendant's email, Plaintiff immediately suffered injuries including extreme confusion, life-threatening emotional and mental distress,  digestive trouble and migraine headache, heart palpitations, anxiety, and insomnia. Plaintiff was so confused and misled by Defendants' lies in the email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk of Plaintiff falling victim to abusive debt collection practices and paying an amount of money to the WRONG party.

38.     On May 28th 2022 Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit I", to be entered into evidence at trial). Upon reading Defendant's email, Plaintiff immediately suffered injuries including extreme confusion, life-threatening emotional and mental distress,  digestive trouble and migraine headache, heart palpitations, anxiety, and insomnia. Plaintiff was so confused and misled by Defendants' lies in the email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' lies creating the materially greater risk that Plaintiff would fall victim to abusive debt collection practices and pay an amount of money to the WRONG party.

39.     At 3:30AM on June 1st 2022 Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit J", to be entered into evidence at trial). Upon being rudely awakened from sleep by and reading Defendant's fraudulent email Plaintiff immediately suffered long-term extreme relational, emotional and mental harms including anxiety attacks with severe physical manifestations including migraine headache, heart arrhythmia, high-blood pressure, diarrhea, trouble breathing, and visual disturbances, continuous thoughts of Defendants' previous invasions of Plaintiff's privacy, confusion as to his rights, loss of sleep, loss of appetite and inability to focus on fully caring for his 4 years old son. Plaintiff was so confused, misled and oppressed by Defendants' email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk of Plaintiff falling victim to abusive debt collection practices and paying an amount of money to the WRONG party.

40.     On June 3rd 2022 Defendants sent an email to Plaintiff seeking to collect a debt allegedly owed to IRRRVPPOA ("Exhibit K", to be entered into evidence at trial). Upon receiving Defendant's email, Plaintiff immediately suffered injuries including extreme confusion, life-threatening emotional and mental distress, digestive trouble, migraine headache, heart palpitations, anxiety, and insomnia. Plaintiff was so confused, misled and oppressed by Defendants' email that he considered waiving his rights and giving up his property just to get Defendants to stop harassing him. Plaintiff suffered concrete injury-in-fact by Defendants' creating the materially greater risk of Plaintiff falling victim to abusive debt collection practices and paying an amount of money to the WRONG party.

41.     Defendants' emails dated March 28th 2022, April 1st 2022, April 28th 2022, May 1st 2022, May 4th 2022, May 28th 2022, June 1st 2022 and June 3rd 2022 each failed to offer any opt-out instructions and each is a "communication" as that term is defined by 15 U.S.C.A. § 1692a(2) because it conveyed information regarding the alleged debt directly to Plaintiff through an electronic medium.

42.     Defendants' collection letter and emails referenced above do not name the actual creditor, instead stating that they were coming from someone other than the creditor. A consumer naturally would suppose himself to be in contact with a debt collector based on this language, just as the Plaintiff did. Applying the "least sophisticated consumer" standard under these facts, the originating creditor has forfeited its exclusion from FDCPA liability by using a false name under which it acted as a third-party debt collector.

43.     The substantial and concrete harms suffered by Plaintiff as a result of Defendants' conduct within the preceding year could not in any way have been reasonably avoided by Plaintiff and are not outweighed by any possible benefits to consumers since the conduct complained of gives no possible benefit to consumers.

44.     Beginning on or about March 28th 2022 Defendants began a pattern of acts which violate the FDCPA and OCPA and which correlate to the common law crimes of fraud, intrusion upon seclusion, intentional infliction of emotional distress, trespass, breach of the covenant of good faith and fair dealing, invasion of privacy, etc.

**FDCPA** VIOLATIONS RESULTING FROM DEFENDANT'S MARCH 28th 2022 EMAIL

45.     The hypothetical least sophisticated consumer would be deceived and/or misled by the statements contained in Defendants' March 28th 2022 email, just as Plaintiff was confused and misled thereby.

46.     The **FDCPA** provides:

§ 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of (A) the character, amount, or legal status of any debt ...

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer ...

(11) The failure to disclose in the initial written communication with the consumer ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector...

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

47.     The alleged debt was not being collected by or owed to "Illinois River Ranch Resort POA" as represented in Defendants' email. The least sophisticated consumer would be misled and/or deceived by Defendants' representations into believing that the alleged debt was owed to and/or being collected by a third party named "Illinois River Ranch Resort POA", just as Plaintiff was misled and confused thereby. The use of the name "Illinois River Ranch Resort POA" therefor violates 15 U.S.C.A. § 1692e(10) per se by the use of a false representation or deceptive means to collect or attempt to collect any debt.

48.     Defendants' email of March 28th 2022 violates 15 U.S.C.A. § 1692e(11) per se by failing to provide the Plaintiff with the required "mini-Miranda" warning.

48 ½.   Defendants' true name is not "Illinois River Ranch Resort POA"as stated in its email of March 28th 2022. The least sophisticated consumer would be misled and/or deceived by Defendants' representations into believing that Defendant's true name is "Illinois River Ranch Resort POA," as was Plaintiff misled and confused thereby. Defendants' email of March 28th 2022 therefor violates 15 U.S.C.A. § 1692e(14) per se by the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

49.     The **FDCPA** further provides:

§ 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

50.   In violation of 15 U.S.C.A. § 1692f per se, Defendants March 28th 2022 email used unfair and unconscionable means to attempt to collect an alleged debt, by Defendants using the name "Illinois River Ranch Resort POA" to make it falsely appear as if a third party was attempting to collect the alleged debt.

51.   Beginning on or about March 28th 2022 Defendants began engaging in debt collection activity without prior advising Plaintiff of Plaintiff's due process rights expressly reserved at 15 U.S.C.A. § 1692g.

52.   In violation of 15 U.S.C.A. § 1692g per se, Defendants' March 28th 2022 email fails to contain an accurate 30-day validation notice.

53.   In violation of 15 U.S.C.A. § 1692g(a)(4) per se, Defendants' March 28th 2022 email fails to inform Plaintiff that Defendants would send him a copy of the verification or judgment against him if he requested verification of the alleged debt in writing.

**FDCPA** VIOLATIONS RESULTING FROM DEFENDANT'S APRIL 1st 2022 DEMAND LETTER

54.   The hypothetical least sophisticated consumer would be deceived and/or misled by the statements contained in Defendants' April 1st 2022 demand letter, just as Plaintiff was confused and misled thereby.

55.   The alleged debt was not owed to and/or being collected by "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)" as represented in Defendants' April 1st 2022 demand letter. The least sophisticated consumer would be misled and/or deceived by Defendants' representations into believing that the alleged debt was owed to and/or being collected by a third party named "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)", just as Plaintiff was confused and misled. The use of the name "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)" therefor violates 15 U.S.C.A. § 1692e(10) per se by the use of any false representation or deceptive means to collect or attempt to collect any debt.

55[1/2].   Defendants true name is not "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)" as represented in Defendants' April 1st 2022 demand letter. The least sophisticated consumer would be misled and/or deceived by Defendants' representations into believing that Defendant's true name is "Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)," just as Plaintiff was confused and misled. Defendants' April 1st 2022 demand letter therefor violates 15 U.S.C.A. § 1692e(14) per se by the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

56.   At the time of Defendants' April 1st 2022 demand letter, no interest was being charged to Plaintiff's account as stated in the letter. The least sophisticated debt would be misled into believing that interest was being charged to Plaintiff's account at the time the letter was sent, just as Plaintiff was confused and misled. The statement that interest was being charged to Plaintiff's account therefor violates 15 U.S.C.A. § 1692e(10) per se by the use of any false representation or deceptive means to collect or attempt to collect any debt.

57.   At the time of Defendants' April 1st 2022 demand letter, no interest was being charged to Plaintiff's account as stated in the letter. The least sophisticated debt would be misled into believing that interest was being charged to Plaintiff's account at the time the letter was sent, just as the Plaintiff

was misled and confused thereby. The statement that interest was being charged to Plaintiff's account therefor violates 15 U.S.C.A. § 1692e(5) per se by use of the threat to take any action which is not intended to be taken, because Defendants have never charged any interest to Plaintiffs account.

58.     No court had ordered Plaintiff to pay anything to "the Association" on August 10 of any year as stated in Defendants' demand letter. The least sophisticated debt would be misled by Defendants' representations into believing that a court had ordered Plaintiff to pay court costs to "the Association" in August of some year, just as Plaintiff was misled and confused thereby. The statement that a court had ordered Plaintiff to pay court costs to "the Association" on the date stated therefor violates 15 U.S.C.A. § 1692e(2)(A) per se by the false representation of the character, amount, or legal status of any debt.

59.     No court had ordered Plaintiff to pay anything to "the Association" on August 10 2022 as stated in Defendants' demand letter. The least sophisticated debt would be misled into believing that a court had ordered Plaintiff to pay court costs to "the Association" in August of some year, just as Plaintiff was misled and confused thereby. The statement that a court had ordered Plaintiff to pay court costs to "the Association" on the date stated therefor violates 15 U.S.C.A. § 1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt.

60.     The false representations and deceptive means referenced in paragraphs 55- 59 above constitute multiple per se violations of 15 U.S.C.A. § 1692f, by the use of unfair or unconscionable means to collect an alleged debt and correlate to the common law tort of fraud.

61.     Defendants' demand letter of April 1st 2022 violates 15 U.S.C.A. § 1692e(11) per se by failing to provide the Plaintiff with the required "mini-Miranda" warning, which omission created a risk that Plaintiff might volunteer detrimental info when Plaintiff responded to Defendants' communications. Defendants' acts and omissions alleged above correlate to the common law tort of fraud.

## FDCPA VIOLATIONS RESULTING FROM DEFENDANT'S APRIL 1st 2022, MAY 1st 2022 AND JUNE 1st 2022 EMAILS

62.     The **FDCPA** provides:

§ 1692(c) Communication in connection with debt collection

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt ...
(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

63.     Defendants' email messages to Plaintiff dated April 1st 2022, May 1st 2022 and June 1st 2022 were all sent in the very early hours of the morning, unusual times which the Defendants knew or should have known to be inconvenient to the Plaintiff. These emails all therefor violate the FDCPA's prohibition at 15 U.S.C.A. § 1692(c)(a)(1) against contacting a consumer in connection with the collection of a debt at a time known to be inconvenient to him. The above alleged acts correlate to the common law tort of intentional infliction of emotional distress, intrusion upon seclusion, fraud and/or invasion of privacy.

64.     The **FDCPA** also provides:
§ 1692(d). Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

65.     The natural direct consequence of Defendants' repeatedly sending emails to Plaintiff during Plaintiffs normal sleeping hours was the harassment, oppression and abuse of Plaintiff. Defendants' email messages to Plaintiff dated April 1st 2022, May 1st 2022 and June 1st 2022 each therefor violate the FDCPA's prohibition at 15 U.S.C.A. § 1692(d) against engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt.

66.     Defendants' email messages to Plaintiff dated April 1st 2022, May 1st 2022 and June 1st 2022 were each sent in violation of 15 U.S.C.A. § 1692e(11) per se by failing to provide the Plaintiff with the required "mini-Miranda" warning.

67.     Defendant's repeated, intentional, and willful pattern of violating the FDCPA as described in the paragraphs above constitute multiple per se violations of 15 U.S.C.A. § 1692f, by the use of unfair or unconscionable means to collect an alleged debt.

**FDCPA** VIOLATIONS RESULTING FROM DEFENDANT'S APRIL 28th 2022, MAY 1st 2022, MAY 4th 2022, MAY 28th 2022, JUNE 1st 2022 and JUNE 3rd 2022 EMAILS

68.     The **FDCPA** provides:
§ 1692c Communication in connection with debt collection

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt …

69.     Plaintiff notified Defendants of Plaintiff's refusal to pay the alleged debt in writing on April 7th 2022 via U.S.P.S. certified Mail, received by Defendants on April 13th 2022. Plaintiff sent another letter disputing the debt on April 25th 2022 via U.S.P.S. certified Mail, received by Defendants on April 27th 2022. And yet, having received notice two weeks prior of Plaintiff's refusal to pay the alleged debt, on April 28th 2022 Defendants began a pattern of violating 15 U.S.C.A. § 1692c(c) by sending email messages to Plaintiff with respect to such debt.

70.     Each and every one of the Defendants' email messages listed below were sent in violation of 15 U.S.C.A. § 1692c(c), because Defendants had prior knowledge of Plaintiff's refusal to pay the alleged debt:
(a) April 28th 2022. See "Exhibit F", attached.
(b) May 1st 2022. See "Exhibit G", attached.
(c) May 4th 2022. See "Exhibit H", attached.
(d) May 28th 2022. See "Exhibit I", attached.
(e) June 1st 2022. See "Exhibit J", attached.
(f) June 3rd 2022. See "Exhibit K", attached.

71.     The Code of Federal Regulations Regulation "F", Title 12 Section 1006.6(e), which implements the FDCPA states:
        **(e) Opt-out notice for electronic communications or attempts to communicate.** A debt collector who communicates … with a consumer electronically in connection with the collection of a debt using a specific email address, … must include in such communication …   a clear and

conspicuous statement describing a reasonable and simple method by which the consumer can opt out of further electronic communications or attempts to communicate by the debt collector to that address…

72.    All of Defendants' emails at issue in this case violate 15 U.S.C.A. § 1692c(c), because each failed to contain a conspicuous opt-out notice. 15 U.S.C.A. § 1692c(c), 12 C.F.R. § 1006.6(e).

73.    Each of Defendants' emails listed in paragraph 70 above violate 15 U.S.C.A. § 1692(d) because the natural consequence of sending said emails was to harass, oppress or abuse Plaintiff in connection with the collection of a debt which is precisely the kind of behavior which the FDCPA prohibits.

74.    Each of Defendants' emails listed in paragraph 70 above violate 15 U.S.C.A. § 1692e(2)(A) per se by the false representation of the legal status of an alleged debt because they falsely represent the alleged debt as lawfully due and owing when they knew the alleged debt was in fact legally in dispute. The hypothetical least sophisticated consumer would be deceived and/or misled by Defendants' statements into believing the alleged debts were due and owing, just as Plaintiff was confused and misled thereby.

75.    Each of Defendants' emails listed in paragraph 70 above violate 15 U.S.C.A. § 1692e(10) per se by falsely representing that the alleged debt was due and owing since using any false, deceptive, or misleading representation or means in connection with collection of the debt is prohibited by this section. The hypothetical least sophisticated consumer would be deceived and/or misled by Defendants' representations into believing that the alleged debts were due and owing, as was Plaintiff thereby. Defendants acts alleged above correlate to the common law tort of fraud.

76.    Each of Defendants' emails listed in paragraph 70 above violate 15 U.S.C.A. § 1692e(11) per se by failing to provide the Plaintiff with the required "mini-Miranda" warning, which omissions created a risk that Plaintiff might volunteer detrimental info when Plaintiff responded to Defendants' communications. Defendants' omissions alleged above correlate to the common law tort of fraud.

77.    Each of Defendants' emails listed in paragraph 70 above violate 15 U.S.C.A. § 1692f per se by knowingly violating 15 U.S.C.A. § 1692c(c) because failing to provide an opt out notice is an unfair or unconscionable means to attempt to collect an alleged debt. Defendants' omissions alleged above correlate to and constitute common law fraud.

78.    Each of Defendants' emails listed in paragraph 70 above separately violate 15 U.S.C.A. § 1692f per se by knowingly violating 15 U.S.C.A. § 1692c(c) because repeatedly contacting Plaintiff about a debt after Plaintiff refused to pay, *while at the same time refusing to respond at all to Plaintiff's letters,* is an unfair or unconscionable means to attempt to collect an alleged debt. Defendants' behaviors alleged above correlate to the common law tort of intentional infliction of emotional distress.

79.    Each of Defendants' communications at issue in this case was made in violation of 15 U.S.C.A. § 1692j by furnishing any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of a debt when in fact such person is not so participating (common law fraud).

79½.    Each of Defendant's violations of the FDCPA as alleged in the paragraphs above also further constitute distinct and separate violations of 15 U.S.C.A. § 1692f per se by the use of unfair or unconscionable means to collect an alleged debt.

**OCPA VIOLATIONS RESULTING FROM DEFENDANTS' MARCH 28th 2022, APRIL 1st 2022, APRIL 28th 2022, MAY 1st 2022, MAY 4th 2022, MAY 28th 2022, JUNE 1st 2022 and JUNE 3rd 2022 EMAILS AND DEFENDANTS' APRIL 1st 2022 DEMAND LETTER**

80.    The Oklahoma Consumer Protection Act provides:

§ 753. Unlawful practices

A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act when, in the course of the person's business, the person:

(3). Makes a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;

(20). Commits an unfair or deceptive trade practice as defined in Section 752 of this title

81.    The Oklahoma Consumer Protection Act also provides:
§ 752. Definitions.
       As used in the Oklahoma Consumer Protection Act:

(13). "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. …

(14). "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers...

82.    Defendants have no to connection or association with "Illinois River Ranch Resort POA" as stated in their email of March 28th 2022; therefor Defendants' use of the name "Illinois River Ranch Resort POA" violates the OCPA's prohibition at 15 OK Stat § 753(3) against falsely representing oneself as being associated or connected with another because Defendants knew or should have known their own true legal corporate identity.

83.    Defendants' false representation in their email of March 28th 2022 that the alleged debt was due and owing to someone named "Illinois River Ranch Resort POA" could have reasonably misled Plaintiff into paying money to the wrong person; therefor Defendants' use of the name "Illinois River Ranch Resort POA" violates the OCPA's prohibition at 15 OK Stat § 753(20) against misrepresentations that could reasonably be expected to mislead a person to his injury.

84.    Defendants' practice of sending emails to Plaintiff between the hours of 3:00AM and 6:00AM, in an attempt to collect a debt at a time when they knew Plaintiff's household would be sleeping is immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to consumers; therefore Defendants' emails of April 28th 2022, May 1st 2022 and June 1st 2022 violate the OCPA's prohibition at 15 OK Stat § 753(20) against unfair trade practices.

85.    Defendants' practice of continuing to send emails to Plaintiff at all hours of the day and night in an attempt to collect an ever-shifting amount of debt using ever-changing names *while at the same time refusing to respond at all to Plaintiff's letters* is immoral, unethical, oppressive, unscrupulous, unconscionable and substantially injurious to consumers; therefore Defendants' emails of April 1st 2022, April 28th 2022, May 1st 2022, May 4th 2022, May 28th 2022, June 1st 2022, and June 3rd 2022 each violate the OCPA's prohibition at 15 OK Stat § 753(20) against unfair trade practices.

86.    All of Defendant's communications referenced above violate the FDCPA repeatedly, and each violation of the FDCPA is also a violation of the OCPA's prohibition at 15 OK Stat § 753(20) against unfair trade practices, by the use of a practice which offends public policy.

87.    The Oklahoma Consumer Protection Act further provides:
§15-776.1. Fraudulent electronic mail messages.
       A. It shall be unlawful for a person to initiate an electronic mail message that the sender knows, or has reason to know:

3. Contains false, malicious, or misleading information which purposely or negligently injures a person;

88.     Defendants had actual prior knowledge that Plaintiff disputed the alleged debt in writing and therefor Defendants knew their emails listed in paragraph 70 above contained false information.
89.     Defendants violated 15 OK Stat § 776.1A(3) by initiating the emails listed in paragraph 70 above that the sender knew contained false information and which injured Plaintiff, because Defendants had reason to know that the emails contained false, malicious or misleading information about the alleged debt, and which false information caused Plaintiff to suffer concrete injuries including but not limited to: migraine headaches, life-threatening emotional distress, extreme mental and emotional anguish, loss of sleep, informational injuries, out-of-pocket expenses and risk of significant economic injury.
90.     Each of the unlawful acts alleged in the paragraphs above is also alleged to be unconscionable pursuant to Okla. Stat. Ann. § 15-761.1(B).

## CAUSES OF ACTION CLAIMED AGAINST DEFENDANTS

### FIRST CAUSE OF ACTION
(Violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.A. §§ 1692 et seq. against all Defendants)

91.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.
92.     Plaintiff allegedly incurred a financial obligation for primarily personal, family, or household purposes that is therefore a "debt" as that term is defined by 15 U.S.C.A. § 1692a(5).
93.     Plaintiff is informed and believes that the Defendants fit the definition of a debt collector under 15 U.S.C.A. § 1692a(6).
94.     Plaintiff is informed and believes that in the normal course of their business Defendants violated the following provisions of the FDCPA, including but not limited to:

(a) 15 U.S.C.A. § 1692(c)(a)(1) by communicating or attempting to communicate with a consumer in connection with the collection of any debt at an unusual time that the debt collector knows or should know is inconvenient to the consumer;
(b) 15 U.S.C.A. § 1692c(c) by communicating with Plaintiff after receipt of notice of Plaintiffs refusal to pay;
(c) 15 U.S.C.A. § 1692c(c), 12 C.F.R. § 1006.6(e) by failing to include an opt-out notice in its email communications;
(d) 15 U.S.C.A. § 1692(d) by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;
(e) 15 U.S.C.A. § 1692e(2)(a) by the false representation of the amount, character, or legal status of an alleged debt;
(f) 15 U.S.C.A. § 1692e(5) by threatening to take an action which was not intended to be taken;
(g) 15 U.S.C.A. § 1692e(10) by using any false, deceptive, or misleading representation or means in collection of the debt;
(h) 15 U.S.C.A. § 1692e(11) by failing to provide the Plaintiff with the required "mini-Miranda" warning;
(i) 15 U.S.C.A. § 1692e(14) by the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(j) 15 U.S.C.A. § 1692f by using any unfair or unconscionable means to collect or attempt to collect the alleged debt;

(k) 15 U.S.C.A. § 1692f(1) by attempting to collect any amount not authorized by the agreement creating the debt or permitted by law;

(l) 15 U.S.C.A. § 1692g(a)(3) by failing to provide Plaintiff with an accurate 30 day validation notice within five days of the initial communication;

(m) 15 U.S.C.A. § 1692g(a)(4) by failing to inform Plaintiff that Defendants would send him a copy of the verification or judgment against him if he requested verification of the alleged debt in writing.

(n) 15 U.S.C.A. § 1692j by furnishing any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of a debt when in fact such person is not so participating.

95.    As a result of Defendants' violations of the **FDCPA**, Plaintiff has suffered concrete and substantial harms, and real risk of harms, including but not limited to, migraine headaches, heart palpitations, high blood pressure, diarrhea, irritability, loss of sleep, life-threatening mental and emotional distress, loss of time with family, extreme emotional and mental anguish, intrusion upon seclusion, public ridicule, embarrassment, humiliation, stress, anxiety, invasion of privacy, depression, damage to reputation, risk of significant economic injury, informational injuries, loss of convenience, indignation, travel and clerical expenses, lost employment opportunities, loss of wages, interference with family and work relationships, injury-in-fact and out-of-pocket expenses and is therefore entitled to unlimited actual damages pursuant to 15 U.S.C.A. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C.A. § 1692k(a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C.A. § 1692k(a)(3) from Defendants.

## SECOND CAUSE OF ACTION

(Violations of the Oklahoma Consumer Protection Act 15 OK Stat § 751 et seq. against all Defendants)

96.    Plaintiff incorporates by reference the preceding paragraphs as though set forth in full herein and further alleges as follows.

97.    This case involves money alleged to be due or owing from a natural person by reason of distribution of services primarily for personal, household or family purposes. As such, this action arises out of a "consumer transaction" as that term is defined by 15 OK Stat § 752(2).

98.    The foregoing acts and/or omissions of Defendants during their normal course of business constitute numerous and multiple violations of the Oklahoma Consumer Protection Act, including but not limited to the following actions taken against Plaintiff:

(a) Defendants violated 15 OK Stat § 753(3) by making a false or misleading representation, knowingly or with reason to know, as to affiliation, connection or association with another;

(b) Defendants violated 15 OK Stat § 753(20) by the use of unfair trade practices;

(c) Defendants violated 15 OK Stat § 753(20) by the use of deceptive trade practices;

(d) Defendants violated 15 OK Stat § 776.1A(3) by sending emails containing false information which injures a person;

(e) Defendants violated 15 OK Stat § 753(20) by failing to comply with the **OCPA** as alleged above.

(f) Defendants violated 15 OK Stat § 753(20) by failing to comply with the **FDCPA** as alleged above.

99.    As a result of Defendants' violations of the Oklahoma Consumer Protection Act, Plaintiff has suffered concrete and substantial harms, and real risk of harms, including but not limited to: migraine headaches, heart palpitations, high blood pressure, diarrhea, irritability, loss of sleep, fatigue, life-threatening mental and emotional distress, loss of time with family, extreme emotional and mental anguish, intrusion upon seclusion, public ridicule, embarrassment, humiliation, stress, anxiety, invasion of privacy, depression, damage to reputation, risk of significant economic injury, informational injuries, loss of convenience, indignation, travel and clerical expenses, lost employment opportunities, loss of

wages, interference with family and work relationships, injury-in-fact and out-of-pocket expenses and is entitled to unlimited actual damages pursuant to Okla. Stat. Ann. § 15-761.1(A), punitive damages for unconscionable violations pursuant to Okla. Stat. Ann. § 15-761.1(B), reasonable attorney's fees and costs of litigation pursuant to Okla. Stat. Ann. § 15-761.1(A), punitive damages pursuant to Okla. Stat. Ann. § 15-776.1(B), unlimited actual damages pursuant to Okla. Stat. Ann. § 15-776.2(A), and reasonable attorney's fees and costs of litigation pursuant to Okla. Stat. Ann. §15-776.2(A) from Defendants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants as follows:

Fair Debt Collection Practices Act

a) An award of actual damages pursuant to 15 U.S.C.A. § 1692k(a)(1) in an amount to be determined by jury trial;

b) An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C.A. § 1692k(a)(2)(A);

c) An award of costs of litigation and reasonable attorney's fees, which right pro se Plaintiff reserves in the event he retains counsel in future, pursuant to 15 U.S.C.A. § 1692k(a)(3) against Defendants in an amount to be determined by jury trial;

d) An award of prejudgment interest pursuant to Okla. Stat. Ann. § 12-727;

e) An award of postjudgment interest pursuant to Okla. Stat. Ann. § 12-727;

f) For any other relief that the Court deems just and proper;


Oklahoma Consumer Protection Act

g) An award of actual damages pursuant to Okla. Stat. Ann. § 15-761.1(A) in an amount to be determined by a jury at trial;

h) An award of punitive damages pursuant to Okla. Stat. Ann. § 15-761.1(B) in an amount not more than $2,000 per violation found to be unconscionable by a jury at trial;

i) An award of civil penalties pursuant to Okla. Stat. Ann. § 15-761.1(C) in an amount not more than $10,000 per violation;

j) An award of costs of litigation and reasonable attorney's fees and costs pursuant to Okla. Stat. Ann. § 15-761.1(A), which right pro se Plaintiff reserves in the event he retains counsel in future, against Defendants in an amount to be determined at a jury trial;

k) An award of actual damages pursuant to Okla. Stat. Ann. § 15-776.2(A) against Defendants in an amount to be determined by a jury at trial;

l) An award of punitive damages pursuant to Okla. Stat. Ann. § 15-776.1(B), of $500 per violation as determined by a jury ;

m) An award of costs of litigation and reasonable attorney's fees and costs pursuant to Okla. Stat. Ann. § 15-776.2(A), against Defendants in an amount to be determined at a jury trial;

n) An award of prejudgment interest pursuant to Okla. Stat. Ann. § 12-727;

o) An award of postjudgment interest pursuant to Okla. Stat. Ann. § 12-727; and

p) For any other relief that the Court deems just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and demands a trial by jury.

DATED: _March 28 2023_

Respectfully Prepared and Submitted by: _Warren Heidelberger_

Warren Heidelberger,   Pro Se Plaintiff
4962 East 27th Street
Tulsa, Ok 74114

**Subject:** Invoice - Reminder: Your payment to IRR RV Park is due
**From:** Illinois River Ranch Resort POA <quickbooks@notification.intuit.com>
**Date:** 3/28/22, 13:27
**To:** RiverRat2013@protonmail.com

POA DUES 1471 DETAILS

Illinois River Ranch Resort POA

# $6,040.74

Print or save

Powered by QuickBooks

**Dear Warren Heidelberger,**

We're sending a reminder to let you know that invoice 1471 has not been paid. If you already paid this invoice or have any questions, let us know!

Have a great day,
IRR RV Park

1 of 4

Invoice - Reminder: Your payment to IRR RV Park is due                              3/23/23, 11:47

| Bill to | |
|---|---|
| | Warren Heidelberger |
| | 4962 E. 27th St. |
| | Tulsa, OK 74114 United States |

| Interval | |
|---|---|
| | Every Month |

| Lot # | |
|---|---|
| | 236, 237 |

| **2022 Monthly Dues 2 Lots** | $48.15 |
|---|---|
| Includes both regular annual dues and 2022 special assessment dues for 2 lots | |

| | Total of new charges | $48.15 |
|---|---|---|
| | Balance due | $6,040.74 |

| **Account summary** | 02/09/2022 |
|---|---|
| Balance forward | $5,992.59 |
| Other payments and credits after 02/09/2022 through 02/28/2022 | $0.00 |

"Exhibit A"
page 1

| | |
|---|---|
| Other invoices from this date | $0.00 |
| New charges | $48.15 |
| Total amount due | $6,040.74 |

You can now pay via PayPal at

paypal.me/irvpoadues

**Print or save**

Illinois River Ranch Resort POA

PO Box 743 Kansas, OK 74347 US

+1 5802275087    irvpoa@gmail.com

If you receive an email that seems fraudulent, please check with the business owner before paying.



© Intuit, Inc. All rights reserved.    Privacy | Security | Terms of Service

---

Invoice - Reminder: Your payment to IRR RV Park is due                              3/23/23, 11:47

--- Attachments: -----------------------------------------------------------------

Invoice_1471_from_Illinois_River_Ranch_Resort_POA.pdf

20.1 KB

"Exhibit "A"
Page 2

**Illinois River Ranch Resort POA**
PO Box 743
Kansas, OK  74347 US
+1 5802275087
irvpoa@gmail.com


No Image Found

# POA DUES

**BILL TO**                                             **POA DUES #** 1471
Warren Heidelberger                                     **DATE** 03/01/2022
4962 E. 27th St.
Tulsa, OK  74114 United
States

**LOT #**
236, 237

| DATE | ACCOUNT SUMMARY | AMOUNT |
|---|---|---|
| 02/09/2022 | Balance Forward | 5,992.59 |
| | Other payments and credits after 02/09/2022 through 02/28/2022 | 0.00 |
| 03/01/2022 | Other invoices from this date | 0.00 |
| | New charges (details below) | 48.15 |
| | Total Amount Due | 6,040.74 |

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| | **2022 Monthly Dues 2 Lots** Includes both regular annual dues and 2022 special assessment dues for 2 lots | 48.15 |

You can now pay via PayPal at                 TOTAL OF NEW CHARGES          48.15

paypal.me/irvpoadues                          BALANCE DUE          **$6,040.74**

*"Exhibit A"*
*page 3*

**Subject:** Invoice 1576 from IRR RV Park
**From:** IRRV POA <quickbooks@notification.intuit.com>
**Date:** 4/1/22, 04:48
**To:** RiverRat2013@protonmail.com
**CC:** irvpoa@gmail.com

POA DUES 1576 DETAILS

## IRRV POA

# $6,088.89

Print or save

Powered by QuickBooks

Warren Heidelberger,

We appreciate your business. Please find your invoice details here. Feel free to contact us if you have any questions. Have a great day!

Have a great day,
IRR RV Park

1 of 4

Invoice 1576 from IRR RV Park                                    3/23/23, 11:46

| Bill to | | Warren Heidelberger<br>4962 E. 27th St.<br>Tulsa, OK 74114 United States |
|---------|--|-----|
| Interval | | Every Month |
| Lot # | | 236, 237 |

| | |
|---|---|
| **2022 Monthly Dues 2 Lots**<br>Includes both regular annual dues and 2022 special assessment dues for 2 lots | $48.15 |

| | |
|---|---|
| Total of new charges | $48.15 |
| Balance due | $6,088.89 |

| Account summary | 03/01/2022 |
|-----------------|-----------|
| Balance forward | $6,040.74 |

"Exhibit B"
page 1

| | |
|---|---|
| Other payments and credits after 03/01/2022 through 03/31/2022 | $0.00 |
| Other invoices from this date | $0.00 |
| New charges | $48.15 |
| Total amount due | $6,088.89 |

You can now pay via PayPal at

paypal.me/irvpoadues

NOTE: There is a fee for using paypal. You will need to add the 3% to your total bill if using paypal.

Print or save

IRRV POA

PO Box 743 Kansas, OK 74347 US

+1 5802275087   irvpoa@gmail.com

If you receive an email that seems fraudulent, please check with the business owner before paying.

3 of 4

Invoice 1576 from IRR RV Park

3/23/23, 11:46

© Intuit, Inc. All rights reserved.   Privacy | Security | Terms of Service

─ Attachments:

Invoice_1576_from_IRRV_POA.pdf

20.3 KB

*"Exhibit B"*
*Page 2*

**IRRV POA**
PO Box 743
Kansas, OK  74347 US
+1 5802275087
irvpoa@gmail.com



No Image Found

# POA DUES

**BILL TO**
Warren Heidelberger
4962 E. 27th St.
Tulsa, OK  74114 United
States

**POA DUES #** 1576
**DATE** 04/01/2022

**LOT #**
236, 237

| DATE | ACCOUNT SUMMARY | AMOUNT |
|---|---|---|
| 03/01/2022 | Balance Forward | 6,040.74 |
| | Other payments and credits after 03/01/2022 through 03/31/2022 | 0.00 |
| 04/01/2022 | Other invoices from this date | 0.00 |
| | New charges (details below) | 48.15 |
| | Total Amount Due | 6,088.89 |

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| | **2022 Monthly Dues 2 Lots**<br>Includes both regular annual dues and 2022 special assessment dues for 2 lots | 48.15 |

You can now pay via PayPal at

paypal.me/irvpoadues

NOTE: There is a fee for using paypal. You will need to add the 3% to
your total bill if using paypal.

| | |
|---|---|
| TOTAL OF NEW CHARGES | 48.15 |
| BALANCE DUE | **$6,088.89** |

"Exhibit B"
page 3

Illinois River Ranch Recreational Vehicle Property Owner's Association, of the Illinois River Ranch, Inc. d/b/a Illinois River Village (IRR POA)
PO Box 743
Kansas, OK  74347
irvpoa@gmail.com

April 1, 2022

Warren Heidelberger
462445 Sands Circle
Watts, OK  74964

Dear Mr. Heidelberger

All members of the Association are required to pay assessments to maintain the park. When you purchased property within the park, you agreed to abide by the covenants of the Association. Your account is seriously behind. You currently owe $433.35 on 2020 assessments, $577.80 on 2021 assessments, and $96.30 on 2022 assessments. Each month on the first day of the month, you will incur an additional $48.15 in monthly assessments for the year of 2022. You also were court ordered to pay $4935.14 in court costs to the Association on August 10th, 2022, over the bus violation of the covenants. The covenants call for an interest charge of 10% per annum and that is being assessed to your account so these numbers will continue to rise. You have not paid your assessments or court costs, nor have you attempted to contact the association to make payment arrangements. We are reaching out to you to offer you a chance to set up a mutually agreeable payment arrangement to get this balance cleared up in a timely manner. The Board of Directors is giving you 30 days to contact us in writing with an acceptable written plan to get your account caught up by the end of the year.

Sincerely

Illinois River Ranch RV POA Board of Directors

"Exhibit C"

Warren Heidelberger
4962 East 27th Street
Tulsa, Oklahoma 74114

April 25, 2022

Illinois River Ranch Recreational Vehicle Property Owner's Association,
of the Illinois River Ranch, Inc.
d/b/a Illinois River Village (IRR POA)
PO BOX 743
Kansas, OK 74347

Dear Madam or Sir:

I am responding to your contact about a debt you are trying to collect. You contacted me by duct-taping a letter to my front door, on April 4 2022 and identified the debt as "$433.35 on 2020 assessments, $577.80 on 2021 assessments, and $96.30 on 2022 assessments" and "$4935.14 in court costs". Please supply the information below so that I can be fully informed:

Why you think I owe the debt and to whom I owe it, including:

- The name and address of the creditor to whom the debt is currently owed, the account number used by that creditor, and the amount owed.

- If this debt started with a different creditor, provide the name and address of the original creditor, the account number used by that creditor, and the amount owed to that creditor at the time it was transferred. When you identify the original creditor, please provide any other name by which I might know them, if that is different from the official name. In addition, tell me when the current creditor obtained the debt and who the current creditor obtained it from.

- Provide verification and documentation that there is a valid basis for claiming that I am required to pay the debt to the current creditor. For example, can you provide a copy of the written agreement that created my original requirement to pay?

The amount and age of the debt, including:

- A copy of the last billing statement sent to me by the original creditor.

- State the amount of the debt when you obtained it, and when that was.

- If there have been any additional interest, fees or charges added since the last billing statement from the original creditor, provide an itemization showing the dates and amount of each added amount. In addition, explain how the added interest, fees or other charges are expressly authorized by the agreement creating the debt or are permitted by law.

- If there have been any payments or other reductions since the last billing statement from the original creditor, provide an itemization showing the dates and amount of each of them.

"Exhibit E"
page I

- If there have been any other changes or adjustments since the last billing statement from the original creditor, please provide full verification and documentation of the amount you are trying to collect. Explain how that amount was calculated. In addition, explain how the other changes or adjustments are expressly authorized by the agreement creating the debt or permitted by law.

- Tell me when the creditor claims this debt became due and when it became delinquent.

- Identify the date of the last payment made on this account.

- Have you made a determination that this debt is within the statute of limitations applicable to it? Tell me when you think the statute of limitations expires for this debt, and how you determined that.

## Details about your authority to collect this debt.

- I would like more information about your firm before I discuss the debt with you. Does your firm have a debt collection license from the State of Oklahoma? If not, say why not. If so, provide the date of the license, the name on the license, the license number, and the name, address and telephone number of the state agency issuing the license.

I have asked for this information because I have some questions. I need to hear from you to make an informed decision about your claim that I owe this money. I am open to communicating with you for this purpose. In order to make sure that I am not put at any disadvantage, in the meantime please treat this debt as being in dispute and under discussion between us.

In addition to providing the information requested above, please let me know whether you are prepared to accept less than the balance you are claiming is owed. If so, please tell me in writing your offer with the amount you will accept to fully resolve the account.

Thank you for your

cooperation.

Sincerely,

Warren Heidelberger

"Exhibit E"
page 2